**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Shaymal Ghosh, | |
| Plaintiff, | **25-cv-04509 (AT) (SDA)** |
| -against- | **REPORT AND RECOMMENDATION** |
| New York City Housing Authority, et al., | |
| Defendants. | |

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE ANALISA TORRES, UNITED STATES DISTRICT JUDGE:**

## INTRODUCTION

*Pro se* plaintiff Shaymal Gosh ("Plaintiff" or "Ghosh") brings this action against defendants New York City Housing Authority ("NYCHA"), as well as Kerri Jew ("Jew"), Nicole Van Gendt ("Van Gendt"), Abiodun Oluwa ("Oluwa"), Jamie Maffeo ("Maffeo"), Allison McLean ("McLean"), Karen Moye ("Moye"), Nickcole Rivera ("Rivera") and Juan Goris ("Goris") (collectively, the "Individual Defendants" and together with NYCHA, "Defendants"), asserting claims for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, as well as claims for violations of his constitutional rights pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 1, at PDF pp. 1-2; *see also* Compl. Exs. N-P, ECF No. 50.)

Now before the Court is a motion by Defendants, pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Complaint. (Defs.' Mot. to Dismiss, ECF No. 30.)  For the reasons set forth below, it is respectfully recommended that Defendants' motion be GRANTED and that Plaintiff be granted leave to amend.

<h3 align="center">**FACTUAL BACKGROUND[1]**</h3>

Ghosh is a Bangladeshi-American male over the age of 40. (Compl. at PDF p. 5.) He has been employed by NYCHA since July 2002. (*Id.*) Despite his credentials, Ghosh "has repeatedly been denied promotions and lateral transfers in favor of less qualified individuals outside his protected categories of race, national origin, and age." (*Id.*) The Court discusses Ghosh's factual allegations in more detail in the context of each of his claims below, and thus starts with only a brief summary of the facts.

Since 2006, Ghosh has been blacklisted from all Research Scientist vacancies after opposing a discriminatory hire. (Compl. at PDF p. 8.) In or around December 2023, his application for a Community Coordinator position was disregarded and the position was awarded to a less experienced employee who lacked Ghosh's civil service credentials. (*Id*. at PDF p. 6.) An Administrative Community Relations Specialist was awarded to another employee, despite Ghosh's superior qualifications and verified eligibility, because that employee shares "close racial and ethnic affiliations" with NYCHA executive Yvette K. Andino. (*Id.*) In or around July 2024,

---

[1] The relevant facts are drawn from Plaintiff's Complaint, including the documents attached thereto. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). For purposes of the pending motion to dismiss, the Court accepts Plaintiff's factual allegations as true and draws all reasonable inferences in his favor. *See City of Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36, 48 (2d Cir. 2017).

Ghosh was interviewed for a City Planner position, but the role already had been offered to another candidate and Ghosh was not considered. (Compl. at PDF p. 8.) In addition, Health Officer and Senior Manager of Health Initiatives roles were awarded to individuals outside Ghosh's race, national origin, and age group and Ghosh, though fully qualified, was not granted interviews or considered for these vacancies. (*Id.*)

In December 2024, NYCHA's Office of Diversity, Equity, and Inclusion ("ODEI") initiated an investigation into Ghosh's complaint of discriminatory hiring. (Compl. at PDF p. 7.) In March 2025, he was interviewed for the Administrative Community Relations Specialist position while the investigation was ongoing. (*Id.*)

Ghosh also alleges that he engaged in protected activity by reporting discrimination and NYCHA retaliated against him by issuing unjustified counseling memoranda, assigning him disproportionate workloads; excluding him from training and communications; conducting pretextual interviews, failing to investigate complaints and facilitating or allowing workplace harassment and physical assault. (Compl. at PDF pp. 9-10.)

**PROCEDURAL HISTORY**

In June 2021, Plaintiff first filed suit against NYCHA in New York state court. (2021 State Compl., 21-CV-06139 ECF No. 1-1.) NYCHA removed the action to this Court. (Not. of Removal, 21-CV-06139 ECF No. 1.) In the Revised Amended Complaint ("RAC") in that earlier action, Plaintiff asserted claims under Title VII, the ADEA, the NYSHRL and the NYCHRL alleging discrimination based on age, race and/or national origin, and retaliation during his employment at NYCHA. (*See* RAC, 21-CV-06139 ECF No. 23.) NYCHA filed a motion to dismiss the RAC and Magistrate Judge Moses recommended that the RAC be dismissed, pursuant to Federal Rule of

3

Civil Procedure 8(a)(2), for failure to plead a short and plain statement and, in the alternative, that Ghosh's federal claims be dismissed, pursuant to Rule 12(b)(6), and that his state law claims be dismissed without prejudice for want of subject matter jurisdiction. *See Ghosh v. New York City Hous. Auth.,* No. 21-CV-06139 (AT) (BCM), 2023 WL 3612553, at *1 (S.D.N.Y. Feb. 27, 2023) ("*Ghosh I*"). District Judge Torres adopted the Report and Recommendation in March 2023. *See Ghosh v. New York City Hous. Auth.*, No. 21-CV-06139 (AT) (BCM), 2023 WL 3746617 (S.D.N.Y. Mar. 20, 2023) ("*Ghosh II*"). Plaintiff appealed, and the appeal remains pending before the U.S. Court of Appeals for the Second Circuit.

On or about July 19, 2023, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). (Compl. at PDF p. 4.) The EEOC issued a Notice of Right to Sue on or about February 25, 2025. (Compl. at PDF p. 2; Right to Sue Ltr., Compl. Ex. D, ECF No. 1-5, at PDF p. 3.) On May 27, 2025, Plaintiff commenced the instant action. (*See* Compl.)  On August 14, 2025, Defendants filed the motion to dismiss that now is before the Court. (*See* Defs.' Mot. to Dismiss.) Plaintiff filed his opposition on August 19, 2025. (Pl.'s Opp., ECF No. 37.[2]) Defendants filed a reply memorandum on September 9, 2025. (*See* Defs.' Reply Mem., ECF No. 44.) With the Court's leave, Plaintiff filed a sur-reply on December 12, 2025. (Pl.'s Sur-Reply, ECF No. 52.)

## LEGAL STANDARDS

A complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement should be plain "so as to enable [the adversary] to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

---

[2] Plaintiff's opposition was filed to the ECF docket twice at ECF Nos. 37 and 38 with different titles. There appears to the Court to be no difference between the two filings.

Dismissal for failure to comply with Rule 8 "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.; see also Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019). "Rule 8 applies to all litigants, including those proceeding *pro se*." *Shamilov v. City of New York*, No. 20-CV-10224 (LTS), 2024 WL 708193, at *4 (S.D.N.Y. Feb. 21, 2024) (citation omitted).

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In deciding a motion to dismiss, the Court "must accept as true all of the allegations contained in a complaint[,]" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). "Determining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

Where, as here, a plaintiff is proceeding *pro se*, the Court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Complaints filed by *pro se* litigants "must be construed liberally and

interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (cleaned up) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Nevertheless, a *pro se* plaintiff "must still plead enough facts to state a claim to relief that is plausible on its face." *Owens v. City of New York*, No. 14-CV-00966 (KBF), 2015 WL 715841, at *1 (S.D.N.Y. Feb. 19, 2015) (citing *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). Moreover, *pro se* plaintiffs "cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. N.Y. State Dep't of Labor*, 709 F.Supp.2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555).

"In determining the adequacy of a claim under Rule 12(b)(6), a court is generally limited to 'facts stated on the face of the complaint,' 'documents appended to the complaint or incorporated in the complaint by reference,' and 'matters of which judicial notice may be taken.'" *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 48 (S.D.N.Y. 2019) (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)). "While the Court must accept the facts as alleged in the complaint, when any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true." *Id.* (cleaned up).

**DISCUSSION**

Defendants argue that the Complaint should be dismissed for failure to comply with Rule 8(a); that some claims are barred by the doctrine of *res judicata* and or time-barred; and that Plaintiff fails to state a claim upon which relief can be granted. (*See* Defs.' Mem., ECF No. 32, at 9-24.) The Court addresses each of these arguments in turn.

6

I.    **<u>Rule 8</u>**

Defendants first argue that Plaintiff's Complaint should be dismissed for failure to comply with Rule 8 because it is "totally disorganized" and, therefore "extremely difficult, if not impossible," for Defendants "to parse what precisely Plaintiff is alleging, and how the allegations are connected to his purported claims." (Defs.' Mem. at 10.)

"The key to Rule 8(a)'s requirements is whether adequate notice is given," and a complaint need not be "a model of clarity so long as it provides fair notice of what the plaintiff's claim is and the ground upon which it rests." *Hernandez v. DiaSorin Inc.,* No. 25-CV-00846 (LAP), 2025 WL 3706579, at *5 (S.D.N.Y. Dec. 22, 2025) (quoting *Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695, 737-38 (S.D.N.Y. 2025)). Although the exhibits to the Complaint complicate what is otherwise a short pleading, the Court finds that Defendants have adequate notice of the core claims set forth in the Complaint, and will not recommend dismissal of those claims under Rule 8.[3] *See id.*; *see also Murillo-Roman v. Pension Boards - United Church of Christ*, No. 22-CV-08365 (JLR), 2024 WL 246018, at *5 (S.D.N.Y. Jan. 23, 2024) (denying motion to dismiss on Rule 8 grounds when complaint was "not the incomprehensible 'labyrinthian prolixity of unrelated and vituperative charges' that Rule 8 was intended to curb"). However, the Court will not parse through the hundreds of pages of exhibits to determine whether Plaintiff purports to assert other claims that are not identified in the Complaint itself. Nor will the Court "attempt to divine which allegations were against a particular defendant if it is not apparent on the face of the [pleading]."

---

[3] In contrast, in *Ghosh I*, the Court found that the underlying facts were "obscured within a convoluted series of paragraphs that ma[de] it difficult to understand who did what to whom, or when" and also "regularly veer[ed] off into lengthy denunciations of NYCHA's COVID policies, nepotism, and general managerial incompetence" such that the "RAC [was] largely incomprehensible, extraordinarily difficult to parse, and so poorly composed as to be functionally illegible." *Ghosh I*, 2023 WL 3612553, at *7.

*See Hernandez,* 2025 WL 3706579, at *5. The claims addressed herein are the claims as to which the Court finds Defendants had fair notice. To the extent Plaintiff intends to assert other claims not addressed herein, the Court recommends that he be granted leave to amend.

**II.**      ***Res Judicata***

Defendants next argue that "many" of Plaintiff's claims are barred by *res judicata* based upon the dismissal of his 2021 action.  (*See* Defs.' Mem. at 11-12.)

"Under the doctrine of claim preclusion, also known as 'res judicata,' a litigant may not bring a new case that includes claims or defenses that were or could have been raised in an earlier case in which the same parties were involved if that case resulted in a judgment on the merits." *Castro v. City Univ. of New York*, No. 25-CV-08167 (LLS), 2025 WL 3855085, at *3 (S.D.N.Y. Dec. 30, 2025) (citing *Brown v. Felsen*, 442 U.S. 127, 131 (1979)). "To determine whether the doctrine of *res judicata* bars a subsequent action," courts in the Second Circuit "consider whether (1) the prior decision was a final judgment on the merits, (2) the litigants were the same parties, (3) the prior court was of competent jurisdiction, and (4) the causes of action were the same." *In re Motors Liquidation Co.*, 943 F.3d 125, 130 (2d Cir. 2019) (citing *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017)).

"A dismissal for failure to state a claim operates as a final judgment on the merits and thus has [claim preclusion] effects." *Franco v. Hyatt Corp.*, No. 24-CV-08740 (LTS), 2025 WL 3281443, at *4 (S.D.N.Y. Nov. 25, 2025) (cleaned up) (citing *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016)). "For the purposes of claim preclusion, '[a] judgment on appeal generally retains its preclusive effect.'" *Id.* (quoting *Malcolm v. Bd. of Educ. of Honeoye Falls-Lima Cent. Sch. Dist.*, 506 F. App'x 65, 68 (2d Cir. 2012)). In the 2021 action,

District Judge Torres dismissed Plaintiff's federal claims against NYCHA with prejudice for failure to comply with Rule 8(a)(2) and, in the alternative, for failure to state a claim under Rule 12(b)(6). *See Ghosh II*, 2023 WL 3746617, at *1. Accordingly, to the extent Plaintiff's federal claims against NYCHA were or could have been raised in that action, the Court finds that they are barred by the doctrine of *res judicata*.[4]

"To determine if a claim could have been raised in an earlier action, courts look to whether the present claim arises out of the same transaction or series of transactions asserted in the earlier action, or whether facts essential to the second suit were present in the first suit." *Castro*, 2025 WL 3855085, at *4 (cleaned up). Claim preclusion "does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000). "The crucial date is the date the complaint was filed." *Id.* The RAC in the 2021 action was filed on December 30, 2021. *See Ghosh I*, 2023 WL 3612553, at *4. In the RAC, Plaintiff asserted discrimination and retaliation claims dating back to 2006. *See id.* at *9. The Court dismissed as time-barred Plaintiff's claims based on conduct occurring earlier than April 14, 2016. *See id.* The Court considered Plaintiff's remaining claims, including failure to promote claims based on his applying to more than 70 vacancies in the prior two to three years, *i.e.*, between 2018 and 2021, and retaliation claims based on conduct during the same period, and dismissed those claims for failure to state a claim. *See id.* at *10-12.

Thus, the Court here finds that Plaintiff's current claims that are based on alleged discrimination and/or retaliation for conduct prior to December 30, 2021, either were or could

---

[4] Plaintiff's inclusion of additional defendants in this action does not allow him to "circumvent *res judicata*'s re-litigation bar." *See Corns v. Good Samaritan Hosp. Med. Ctr.*, No. 23-CV-00093 (JMA) (ARL), 2024 WL 4008244, at *4 (E.D.N.Y. Aug. 30, 2024).

have been raised in the 2021 action and *res judicata* precludes him from raising them again.[5] *See Jones-Khan v. Westbury Bd. of Educ.*, No. 21-CV-03908 (JMA) (JMW), 2022 WL 280646, at *7 (E.D.N.Y. Jan. 31, 2022). Defendants do not identify with specificity the claims they contend are subject to preclusion but suggest that the date of preclusion should be the date that Judge Moses issued her Report and Recommendation, *i.e.*, February 27, 2023. (*See* Defs.' Mem. at 12 n.4.) However, the prior decision did not address conduct from 2022 or beyond and, thus, the Court finds that any such claims are not precluded based upon *res judicata*. *See Ghosh I*, 2023 WL 3612553, at *4-5. The prior decision also did not address a claim for hostile work environment and that claim also is not precluded based upon *res judicata*. Accordingly, the Court considers Plainitff's claims stemming from conduct in 2022 and later, as well as his hostile work environment claims.

### III.    Plaintiff's Title VII And ADEA Claims

#### A.    Statute Of Limitations

"Under Title VII, plaintiffs must file a charge with the EEOC "within 180 [days] or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days 'after the alleged unlawful employment practice occurred.'" *King v. Aramark Servs. Inc.*, 96 F.4th 546, 559 (2d Cir. 2024) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-5(e)(1))). The same is true under the ADEA. *See Chui v. Publicis Groupe S.A.*, No. 24-CV-06767 (AT), 2025 WL 2711197, at *3 (S.D.N.Y. Sept. 23, 2025)

---

[5] This includes, *inter alia*, Plaintiff's claims based upon about not being hired for a Research Scientist position in 2005, which was filled by Ying-Meng Liu; a Senior Manager of Health Initiatives position in 2012, which was filled by Andrea Mata; and an Environmental Health and Safety Officer position in 2019, which was filled by Patrick O'Hagan. (*See* Defs.' Mem. at 6.)

(citing 29 U.S.C. § 626(e)); *see also Rusis v. Int'l Bus. Machines Corp.*, 529 F. Supp. 3d 178, 198 (S.D.N.Y. 2021) ("The ADEA further requires that an EEOC charge be filed within 180 days, or 300 days for a deferral state, after the alleged unlawful practice occurred.").

"The filing requirement is analogous to a statute of limitations, barring all claims arising outside the 300-day period absent an applicable exception." *Asemota v. City of New York*, No. 24-CV-07793 (LAP), 2025 WL 2662301, at *8 (S.D.N.Y. Sept. 16, 2025) (cleaned up); *see also Rusis*, 529 F. Supp. 3d at 198 (recognizing 300-day limit as an effective statute of limitations in ADEA claims). "One exception to the 300-day filing requirement is the continuing violation doctrine, which applies where the alleged untimely acts 'were part of a continuing policy and practice of prohibited discrimination.'" *Asemota*, 2025 WL 2662301, at *9 (quoting *Valtchev v. City of New York*, 400 F. App'x 586, 588 (2d Cir. 2010)).

Plaintiff filed his EEOC Charge on or about July 19, 2023.[6] (Compl. at PDF p. 4.) Thus, Defendants argue that Plaintiff's Title VII and ADEA claims based upon events occurring before September 22, 2022 (300 days prior to July 19, 2023) are time-barred. (Defs.' Mem. at 12-13). In opposition, Plaintiff asserts that his claims are timely because they are part of an ongoing pattern of discrimination and retaliation and "form part of a continuing violation and ongoing hostile work environment rooted in Plaintiff's protected activity." (Pl.'s Opp. at PDF p. 2; *see also* Compl. at PDF pp. 13-14.)

---

[6] Although the Complaint alleges that Plaintiff filed his EEOC Charge on July 19, 2023, documents submitted by Defendants show that Plaintiff digitally signed the EEOC Charge on August 7, 2023 and filed an Amended Charge on August 28, 2024. (*See* Le Decl. Exs. 7 & 8, ECF Nos. 31-9 & 31-10.) The Court will use the earlier July 19, 2023 date to determine the limitations period, which is the date used by Defendants. (*See* Defs.' Mem. at 13.)

It is well settled that the continuing violation doctrine does not apply to discrete acts of discrimination or retaliation, "such as termination, failure to promote, denial of transfer or refusal to hire[.]" *Staten v. City of New York*, 726 F. App'x 40, 43 (2d Cir. 2018) (*citing Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)); *see also Ghosh I*, 2023 WL 3612553, at *9 (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 156 (2d Cir. 2012)) ("The doctrine is not available at all in failure-to-promote cases, because 'failures to promote are discrete acts of discrimination and thus do not implicate the continuing-violation doctrine.'"). "Because a discrete discriminatory act is individually actionable and 'occurs' on the day that it 'happened,' the 300-day limitations period begins running on the day of each occurrence, meaning each discrete act claim carries its own 300-day limitations period." *King*, 96 F.4th at 559; *see also Ekpe v. City of New York*, No. 20-CV-09143 (AT), 2024 WL 1621207, at *4 (S.D.N.Y. Apr. 12, 2024) (citing *Morgan*, 536 U.S. at 113) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."). "[A]n untimely discrete act claim cannot be pulled into the limitations period by a claim premised on a continuing course of conduct, even if the course of conduct includes that discrete act." *King*, 96 F.4th at 560 (citing *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004)). Accordingly, the Court finds that Plaintiff's Title VII and ADEA claims based upon discrete acts occurring before September 22, 2022 are time-barred.

"Hostile environment claims, however, are different in kind from discrete acts, as their very nature involves repeated conduct." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (citing *Morgan*, 536 U.S. at 115) (cleaned up). "Because a hostile work environment claim 'is composed of a series of separate acts that collectively constitute one 'unlawful employment practice[,]' . . . it does not matter . . . that some of the component acts fall outside

the statutory time period.'" *Asemota*, 2025 WL 2662301, at \*9 (quoting *Morgan*, 536 U.S. at 117).

Thus, "[a]s long as a plaintiff is alleging such acts constitute a single unlawful employment

practice, the entire time period of the hostile environment may be considered for purposes of

determining liability." *Id.*; *see also King*, 96 F.4th at 561 ("A discrete discriminatory act . . . within

the limitations period may . . . render a hostile work environment claim timely *if it is shown to

be part of the course of discriminatory conduct that underlies the hostile work environment

claim*.") (emphasis in original).

As discussed further below, the Complaint includes timely allegations of discriminatory

conduct. Therefore, insofar as Plaintiff is alleging such acts constitute a single unlawful

employment practice, his hostile work environment claim is not time-barred.

**B.    Plainitff's Discrimination Claims**

**1.    Failure To Promote/Adverse Employment Action Claims**

Under Title VII, an employer cannot "fail or refuse to hire or . . . discharge an individual,

or otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or

national origin." *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023) (quoting 42 U.S.C. § 2000e-

2(a)(1)). Under the ADEA, which protects individuals who are at least 40 years old, 29 U.S.C. §

631(a), it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or

otherwise discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's age." *Id.* § 623(a)(1).

To state a claim against under Title VII, a plaintiff must allege: "(1) the employer

discriminated against him (2) because of his race, color, religion, sex, or national origin." *Buon*,

65 F.4th at 78 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015)). For purposes of a motion to dismiss for failure to state a claim, a complaint must plausibly allege facts illustrating that the plaintiff: "[(1)] is a member of a protected class, [(2)] was qualified, [(3)] suffered an adverse employment action, and [(4)] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon*, 65 F.4th at 79 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). The same framework applies to ADEA claims, except that an ADEA plaintiff must plausibly allege that he would not have suffered an adverse employment action "but for his age." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021); *see also Chui*, 2025 WL 2711197, at *4.

Based upon the allegations in the Complaint, Plaintiff alleges timely failure to promote claims based upon his rejection from the following positions in 2023 and 2024: Community Coordinator, Administrative Community Relations Specialist, Health Officer, Senior Manager of Health Initiatives, Research Scientist and City Planner.[7] (Compl. at PDF pp. 6, 8, 9.) Defendants argue that Plaintiff has not plausibly alleged that he was qualified for any of the positions to which he applied and that he has not satisfied his burden to allege facts from which discriminatory motivation can be inferred. (Defs.' Mem. at 15-19.)

With respect to his qualifications, Plaintiff alleges that he was repeatedly denied promotions "[d]espite holding a master's degree, a professional health credential, and multiple perfect-score civil service certifications from [the Department of Citywide Administrative

---

[7] Plaintiff attaches to the Complaint a list of additional job applications he submitted from July 31, 2023 to May 24, 2024. (Compl. Ex. C, ECF No. 1-4, at 2-3.)  However, the Complaint does not include any facts about these applications to plausibly state a claim for relief. For example, Defendants point out that the list includes executive positions for which Plaintiff has not alleged that he was qualified. (*See*, *e.g.*, Defs.' Mem. at 16 n.8.)

Services ("DCAS")] (100/100)."[8] (Compl. at PDF p. 5; *see also* Compl. Ex. B.) Plaintiff alleges that, for the Community Coordinator, Administrative Community Relations Specialist, Health Officer and Senior Manager of Health Initiatives positions, he "either met or exceeded the minimum qualifications" and "was eligible for promotion or lateral transfer." (*Id.* at PDF p. 6.) Plaintiff further alleges that he was qualified for the Research Scientist based on his "credentials, experience, and prior civil service status" and, with respect to the City Planner position, held "a top-ranking score on the civil service list." (*Id.* at PDF p. 8.) Plaintiff attaches documents showing his civil service examination results for certain positions, including the Administrative Community Relations Specialist and City Planner. (*See* Compl. Ex. A, ECF No. 1-2, at PDF pp. 3-6.) He also attaches documents setting forth the minimum qualifications for the Research Scientist, Administrative Community Relations Specialist and Senior Manager of Health Initiatives positions. (*See* Compl. Ex. I, ECF No. 1-10, at PDF pp. 11-15; Compl. Ex. J, ECF No. 1-11, at PDF pp. 26-27, 29-31.) However, Plaintiff does not allege that he met all of these criteria or how his education and credentials qualified him for the other positions to which he applied.

In any event, even if Plaintiff's allegations were enough to allege that he was qualified for the positions to which he applied, the Court agrees with Defendants that Plaintiff has not alleged facts to provide even minimal support for the proposition that NYCHA was motivated by

---

[8] The New York State Constitution provides that all "[a]ppointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competititve[.]" N.Y. CONST. art. V, § 6. "Implementing this mandate, New York's Civil Service Law requires that candidates for competitive positions first pass an examination demonstrating that they have the skills required for the corresponding job." *Hall v. New York City Dep't of Transp.*, 701 F. Supp. 2d 318, 334 (E.D.N.Y. 2010). "All passing candidates are then placed on a ranked eligibility list from which, as demand dictates, permanent appointments to open positions are made." *Id.*

discriminatory intent in selecting other candidates. "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse action]." *Littlejohn*, 795 F.3d at 312. On a failure-to-promote claim, "it is not enough for the plaintiff simply to allege that he was qualified for a position but did not get it." *Ghosh I,* 2023 WL 3612553, at \*10. Rather, to support an inference of discrimination, a plaintiff must plausibly allege that "the position was filled by someone outside the protected class who was similarly or less well qualified than the plaintiff." *Okafor v. New York State Ins. Fund*, No. 24-CV-05680 (JGK), 2025 WL 2299172, at \*7 (S.D.N.Y. Aug. 8, 2025) (citing *Gordon v. City of New York*, No. 14-CV-06115 (JPO), 2015 WL 3473500, at \*7 (S.D.N.Y. June 2, 2015)).

Plaintiff alleges that the Community Coordinator "[p]osition was awarded to Shane Clark, who had less experience, fewer years of service at NYCHA (less than one year), and lacked Plaintiff's civil service credentials." (Compl. at PDF p. 6.) However, Plaintiff does not allege any facts regarding Clark's characteristics. *See Abdal-Rahim v. MTA New York City Transit*, No. 17-CV-07499 (VEC) (GWG), 2018 WL 6176217, at \*4 (S.D.N.Y. Nov. 27, 2018), *report and recommendation adopted,* 2019 WL 549048 (S.D.N.Y. Feb. 10, 2019) (plaintiff's allegations that "he passed a civil service test and that the NYCTA hired candidates with lower scores" insufficient to state claim for discrimination absent any allegations regarding characteristics of other candidates or any facts suggesting that plaintiff's race, color, sex, national origin, or age, was a motivating factor in the decision to hire other candidates); *Pell v. Yonkers City Sch. Dist.*, No. 23-

16

CV-10398 (NSR), 2025 WL 2084739, at *7 (S.D.N.Y. July 24, 2025) (no plausible support for inference of discrimination when plaintiff failed to allege similarly situated individuals who were treated more favorably); *Baez v. New York*, 56 F. Supp. 3d 456, 467-68 (S.D.N.Y. 2014) (no inference of discrimination when Complaint lacked allegations that plaintiff was passed over for promotions in favor of individuals outside of her protected class), *aff'd*, 629 F. App'x 116 (2d Cir. 2015).

Plaintiff further alleges that the Administrative Community Relations Specialist "[p]osition was awarded to Andy Destin, despite Plaintiff's superior qualifications and verified eligibility under DCAS civil service rules[,]" and that Destin "shares close racial and ethnic affiliations" with NYCHA executive Yvette K. Andino. (Compl. at PDF p. 6.) The Court construes these allegations as asserting that Destin was outside of Plaintiff's protected class at least in terms of race or national origin. Similarly, with respect to the Health Officer and Senior Manager of Health Initiatives positions, Plaintiff alleges that the individuals who were awarded those roles were "outside Plaintiff's race, national origin, and age group." (*Id*.) However, he does not plead facts regarding the qualifications of those individuals to support an inference of discrimination. *See Matthews v. Rasa*, No. 24-2499, 2025 WL 3687759, at *2 (2d Cir. Dec. 19, 2025) (quoting *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (allegations that Black and Hispanic colleagues were promoted, while plaintiff and another white colleague were not insufficient to state a claim absent "any details to suggest that plaintiff was similarly situated in all material respects to promoted colleagues"). Plaintiff's allegations that he received perfect scores on his civil service examinations are insufficient to establish that he was more qualified than other candidates. (*See* Defs.' Mem. at 16 (citing N.Y. Civ. Serv. Law §§ 56, 60, 61).) Although Plaintiff suggests that NYCHA

17

disregarded civil service rankings in selecting other candidates (*see* Compl. Ex. F at PDF p. 9), he does not allege that lower-ranked candidates outside of his protected class were selected over him.[9] *See James v. Borough of Manhattan Cmty. College*, 20-CV-10565 (LJL), 2021 WL 5567848, at *6 (S.D.N.Y. Nov. 29, 2021) (plaintiff's "conclusions that those outside of her protected classes who were offered the contract were not as qualified as she was, without further information supporting that conclusion, is not sufficient to sustain a minimal inference of discriminatory motivation for the adverse employment action"). Moreover, Plaintiff's conclusory allegation that NYCHA engaged in a "consistent pattern of selecting less qualified individuals over Plaintiff" (Compl. at PDF p. 6) is insufficient to permit an inference that his race or national origin was a motivating factor in NYCHA's decision to promote other candidates or that he would not have been denied the promotions but for his age. *See Ghosh I,* 2023 WL 3612553, at *11 (conclusory allegations that denial of promotion was due to discrimination "cannot substitute for the necessary connective tissue that links [Plaintiff's] protected status to the alleged failure to promote") (cleaned up).

To the extent Plaintiff also purports to assert a discrimination claim based upon one or more instances where he was issued a counseling memo (*see* Compl. at PDF p. 8; Pl.'s Opp. at 4), the Court agrees with Defendants that these memos do not rise to the level of adverse employment actions. (*See* Defs.' Mem. at 18-19.) To establish an adverse employment action, a plaintiff must show "some harm respecting an identifiable term or condition of employment[,]" although the harm need not be "significant[,] serious or substantial." *Muldrow v. City of St. Louis,*

---

[9] An applicant's ranking on the DCAS-established eligibility list determines the order in which their application is considered. *See* N.Y. Civ. Serv. Law §§ 50, 56, 60, 61.

*Missouri*, 601 U.S. 346, 355 (2024). Plaintiff does not allege any harm respecting a term or condition of his employment because of the counseling memos and, thus, has not plausibly alleged that the memos constitute adverse employment actions.[10] *See Mcloughlin v. Vill. of Southampton*, No. 23-CV-06586 (GRB) (AYS), 2024 WL 4189224, at *3 (E.D.N.Y. Sept. 13, 2024) (use of counseling memos and scrutiny of plaintiff's work did not rise to the level of adverse employment actions under *Muldrow*). Plaintiff also fails to allege any facts to support an inference that he was issued these counseling memos because of his race, national origin or age.

For all these reasons, Plaintiff's discrimination claims based on adverse employment actions should be dismissed.

### 2.    Disparate Impact

To state a Title VII claim for discrimination based on disparate impact, a plaintiff must allege facts to plausibly support three elements: (1) a specific employment practice or policy; (2) the existence of a disparity and (3) a causal relationship between the two. *See Mandala v. NTT Data, Inc.,* 975 F.3d 202, 207-09 (2d Cir. 2020). Plaintiff does not plausibly allege any of these elements. The Complaint contains only a conclusory allegation that NYCHA's employment practices had a disparate impact on Plaintiff in violation of Title VII (Compl. at PDF p. 9), which falls far short of what is required to state a claim for relief. *See Shih v. Broadway League*, No. 23-CV-08035 (JPC) (RWL), 2025 WL 567987, at *4 (S.D.N.Y. Jan. 28, 2025) ("[A]llegations failing to connect any specific policy or practice to a disparate impact do not state a plausible claim for discrimination, even under a disparate impact theory.") (collecting cases), *report and*

---

[10] The Court separately considers these allegations as part of Plaintiff's hostile work environment claim. *See* Discussion Section III(B)(3), *infra*.

*recommendation adopted*, 2025 WL 1890608 (S.D.N.Y. July 8, 2025); *see also Myers v. Schuyler Hosp.*, No. 23-CV-06727 (FPG), 2025 WL 388852, at *3 (W.D.N.Y. Feb. 4, 2025) ("conclusory assertion of [disparate] impact is insufficient to thwart summary dismissal").

### 3.    Hostile Work Environment

"The terms, conditions, or privileges of employment" protected under Title VII and the ADEA include protection against "requiring people to work in a discriminatorily hostile or abusive environment." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 41 (2d Cir. 2019) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). "To state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show the conduct '(1) is objectively severe or pervasive -- that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic].'" *Falu v. Cnty. of Orange*, 814 F. App'x 655, 658-59 (2d Cir. 2020) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)). The same elements are required under the ADEA. *See Boonmalert v. City of New York*, 721 F. App'x 29, 33 (2d Cir. 2018); *see also Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 41 (2d Cir. 2019) ("Similarly, under the ADEA, '[a] work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it' because of conduct based on the plaintiff's over-40 age.").

"In determining whether a hostile work environment has been established, courts consider the totality of the circumstances, including the nature, frequency, and severity of the conduct as well as whether the conduct interferes unreasonably with an employee's work performance." *Falu*, 814 F. Appx at 659 (citing *Harris*, 510 U.S. at 23); *Boonmalert*, 721 F. App'x

20

at 33 (citing *Littlejohn*, 795 F.3d at 321). "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Littlejohn* 795 F.3d at 297 (citation omitted). "[A] discrete act that contributes to a hostile work environment and falls within the limitations period allows a factfinder to consider 'the entire time period of the hostile environment . . . for the purposes of determining liability.'" *King v. Aramark Servs. Inc.*, 96 F.4th 546, 562 (2d Cir. 2024) (quoting *Patterson*, 375 F.3d at 220).

Plaintiff asserts a claim for hostile work environment based on his race and national origin, and liberally construing the Complaint, based on his age. (*See* Compl. at PDF pp. 9-10; Pl.'s Opp. at 5.) In addition to allegations that he was excluded from interviews and denied various promotions, Plaintiff alleges, *inter alia*, that Jew failed to respond to his communications; Oluwa repeatedly misspelled his name; Moye harassed Plaintiff in front of junior staff, took away his office entrance key and left shoes in front of his workspace; Rivera engaged in daily harassment; Goris harassed him by issuing a counseling memo; McLean subjected him to unequal discipline and failed to investigate an assault against him; and another NYCHA employee misidentified Plaintiff's name and gender and verbally threatened him. (Compl. at PDF pp. 3-4, 8; Pl.'s Opp. at 5.)

Defendants do not separately address such a claim in their motion. Nonetheless, the Court finds that Plaintiff has not stated a claim for hostile work environment. Plaintiff's allegations, even considered in their totality, do not amount to the type of severe and pervasive conduct that is actionable as a hostile work environment claim. *See Duplan v. City of New York*, 888 F.3d 612, 618 (2d Cir. 2018) (allegations that plaintiff's supervisors ostracized and ignored him and that he was denied multiple promotions for which he was qualified, among other factors,

21

insufficient to support hostile workplace claim); *McCullough v. Xerox Corp.*, 942 F. Supp. 2d 380, 386 (W.D.N.Y. 2013) (plaintiff's allegations that she was denied promotions and subject to work-related criticism insufficient to state hostile work environment claim); *see also Nazon v. Time Equities, Inc.*, No. 21-CV-08680 (AT) (SLC), 2022 WL 18959570, at *20 (S.D.N.Y. Nov. 22, 2022) ("Severity is the hallmark of a hostile work environment claim, which is not intended to promote or enforce civility, gentility or even decency.") (cleaned up), *report and recommendation adopted*, 2023 WL 1516905 (S.D.N.Y. Feb. 3, 2023).

Moreover, Plaintiff has not alleged any facts from which the Court could infer that he was subject to a hostile work environment claim because of his race, national origin or age. *See Matthews,* 2025 WL 3687759, at *2 (affirming dismissal of hostile work environment claim where plaintiff's "allegations did not plausibly suggest that any of the alleged events occurred because of her race, color, or age"). Accordingly, it is recommended that Plaintiff's hostile work environment claim be dismissed.

## C.    Plaintiff's Retaliation Claims

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). For a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90. "[T]he same standards and burdens apply to claims under both

22

[Title VII and the ADEA]." *Matthews*, 2025 WL 3687759, at *2 (citing *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006)).

For purposes of a retaliation claim, "an adverse employment action is conduct that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Matthews,* 2025 WL 3687759, at *2 (citing *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023)); *see also Carr v. New York City Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023). With respect to the fourth element, a plaintiff must plausibly allege "that the adverse action would not have occurred in the absence of the retaliatory motive." *Lively*, 6 F.4th 293, 307 (citing *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)). "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Id. "*The Second Circuit has 'not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action' for the purpose of allowing the district courts 'to exercise [their] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases.'" *Nazon*, 2022 WL 18959570, at *18 (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)).

The Complaint, and the attached exhibits, reflect a stream of complaints that Plaintiff made regarding alleged discrimination and retaliation. For example, Plaintiff alleges that, in addition to his EEOC filing in 2023, he submitted a complaint to NYCHA's compliance department in 2024, submitted a formal complaint to ODEI in December 2024 and submitted a complaint to the Office of the Inspector General. (Compl. at PDF p. 3-4, 6, 9.) Documents attached to the Complaint also refer to numerous other complaints Plaintiff lodged between 2022 and 2025.

23

(*See*, e.g., Compl. Ex. F, ECF No. 1-7, at PDF pp. 8-10 (March 19, 2025 email to ODEI Team and others referencing discrimination based on race, age and color), p. 11 (November 7, 2024 email to Jew regarding alleged retaliation), pp. 22-23 (November 4, 2024 email to NYCHA Human Resources Team referencing discrimination and retaliation); Compl. Ex. G, ECF No. 1-8, at PDF pp. 18-19 (referencing Plaintiff's December 2022 complaint to ODEI), p. 20 (referencing Plaintiff's July 26, 2023 complaint to ODEI); p. 22 (referencing Plaintiff's March 2024 reports to ODEI), p. 23 (referencing Plaintiff's August 28, 2024 complaint to ODEI), p. 24 (referencing Plaintiff's December 3, 2024 complaint to ODEI); Compl. Ex. H, ECF No. 1-9, at PDF pp. 19-20 (March 10, 2024 email to Moye regarding discrimination and retaliation).)

Plaintiff further alleges that, as a result of his complaints, NYCHA retaliated against him by, *inter alia*, excluding him from key meetings; denying him internal interview opportunities and positions, including the City Planner position, issuing retaliatory counseling memoranda; assigning him excessive and disproportionate workloads and systematically denying him advancement (Compl. at PDF p. 6; Pl.'s Opp. at 3-4.) Plaintiff does not allege any facts regarding his exclusion from meetings or alleged disproportionate workload and, thus, cannot state a claim based on those actions.

With respect to the City Planner position, Plaintiff alleges that he was denied the position in March 2025 following a "pretextual interview" (*see* Compl. at PDF pp. 7-8), but does not allege that any of the decisionmakers were aware of his complaints. Accordingly, he has not plausibly alleged a causal connection between any protected activity and NYCHA's failure to hire him for that position. *See Ghosh I*, 2023 WL 3612553, at *12 ("[I]n order to create an inference of retaliatory animus through temporal proximity, a plaintiff must show that the personnel

24

responsible for the alleged retaliation knew about the protected activity.") (citing cases). Plaintiff also alleges that a counseling memo from Moye was retaliatory, but even if such memo could be considered an adverse action for purposes of a retaliation claim, the only indication that Moye was aware of his complaints is his inclusion of an email sent to Moye in March 2024, which is too far removed to create an inference, based on temporal proximity alone, that issuance of the memo was motivated by retaliatory animus. *See Nazon*, 2022 WL 18959570, at *19 (dismissing retaliation claim where 107 days had passed between complaint and alleged retaliatory conduct and nothing in pleading suggest retaliatory animus).

The Court is mindful that "[a]t the pleadings stage, causation may be satisfied by allegations that 'each of the adverse actions' defendants took 'occurred against a backdrop of continuing antagonism and frustration of [the plaintiff's] professional ambitions.'" *Collymore v. City of New York*, 767 F. App'x 42, 46 (2d Cir. 2019) (quoting *Duplan*, 888 F.3d at 626). However, unlike in those cases, Plaintiff has not alleged facts "establish[ing] a drumbeat of retaliatory animus from which a plausible inference of causation can be drawn." *Duplan*, 888 F.3d at 626. Accordingly, the Court recommends that Plaintiff's retaliation claims under Title VII and the ADEA be dismissed.

## IV.    NYSHRL And NYCHRL Claims

### A.    Statute Of Limitations

The statute of limitations under both NYSHRL and NYCHRL is three years. See N.Y. Exec. Law § 296; N.Y. C.P.L.R. 214(2); New York City, N.Y., Code § 8-502(d); *see also Ikedilo v. Statter*, No. 23-7947, 2025 WL 1011346, at *1 (2d Cir. Apr. 2, 2025). Ghosh filed his Complaint in this

25

action May 27, 2025. (*See* Compl.) Accordingly, Defendants argue that Plaintiff's NYSHRL and NCYHRL claims that accrued before May 27, 2022 are time-barred.

"Although the Second Circuit has not spoken on this issue, Courts in this Circuit have concluded that the statute of limitations is tolled with respect to claims brought under the NYSHRL and the NYCHRL pending resolution of a plaintiff's 'related' EEOC charge." *Shin v. NBC Universal Media, LLC*, No. 23-CV-10996 (LJL), 2025 WL 438297, at *11 (S.D.N.Y. Feb. 7, 2025) (citing *Parker v. Israel Disc. Bank of N.Y., Inc.*, No. 21-CV-07196 (VEC), 2022 WL 16833626, at *4 (S.D.N.Y. Nov. 9, 2022) (collecting cases). Liberally construing the Complaint, the Court finds Plaintiff's claims to have been tolled from when he filed the EEOC charge on July, 19, 2023 through February 25, 2025, the date the EEOC issued the right to sue letter. *See id.* (calculating tolling based on pendency of plaintiffs' EEOC charges). Applying this tolling period of 587 days, the Court finds that Plaintiff's claims based on discrete acts before October 17, 2020 are time-barred, but that his later claims are timely.[11]

### B.      Plaintiff's Discrimination Claims

The NYSHRL prohibits New York employers from discriminating against any person in "terms, conditions or privileges of employment" because of, inter alia, their race, creed, color, national origin and/or disability.  N.Y. Exec. Law § 296(1)(a). The NYCHRL similarly prohibits City employers or their agents from discriminating against any individual because of, inter alia, the

---

[11] A "more generous" application of the continuing violation doctrine applies to claims under the NYCHRL. *See Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 250 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013). "Otherwise time-barred discrete acts can be considered timely where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Id.* (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)). Nonetheless, the Court finds that Plaintiff has not alleged sufficient facts to amount to a discriminatory policy or practice.

employee's race, creed, color, national origin and/or disability, "in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a)(3).

The provisions of the NYCHRL are interpreted broadly in favor of discrimination claims "to the extent that such a construction is reasonably possible." *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (2011). Courts must analyze NYCHRL claims separately from any federal law claims and should construe the NYCHRL 'liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). A plaintiff need only show that they were treated "less well, at least in part for a discriminatory reason." *Khwaja v. Jobs to Move Am.*, No. 10-CV-07070 (JPC), 2021 WL 3911290, at *3 (S.D.N.Y. Sept. 1, 2021) (quoting *Mihalik*, 715 F.3d at 110 n.8). Following its amendment in 2019, the standard of liability under the NYSHRL is treated as akin to the standard under the NYCHRL. *See Obah v. Dep't of Admin. for Children's Servs.*, No. 23-CV-04997 (GHW) (SDA), 2024 WL 2848903, at *9 (S.D.N.Y. May 2, 2024), *report and recommendation adopted*, 2024 WL 2848883 (S.D.N.Y. May 30, 2024). Although the NYCHRL and NYSHRL are more lenient than their federal counterparts, a plaintiff still must allege facts sufficient to raise a plausible inference of discriminatory motive. *See Mihalik*, 715 F.3d at 110 ("the NYCHRL is not a general civility code . . . [and] [t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive.") (cleaned up).

For the same reasons discussed in the context of Plaintiff's federal claims, the Court finds that Plaintiff has not alleged sufficient facts regarding favorable treatment of employees outside of his protected classes or any other facts to suggest that he was treated less well because of his race, national origin or age. Thus, even under the more liberal pleading standard, Plaintiff has

failed to state a claim for relief and the Court recommends that his discrimination claims under the NYSHRL and NYCHRL be dismissed. *See Ramos v. Palm W. Corp.*, No. 23-CV-09441 (JMF), 2024 WL 3228449, at *3 (S.D.N.Y. June 27, 2024) (dismissing NYCHRL and NYSHRL claims absent any facts that plaintiff was treated less well because of his age); *Chamberlain v. Splashlight, LLC*, No. 23-CV-06318 (VEC) (SLC), 2024 WL 5170266, at *7 (S.D.N.Y. Oct. 10, 2024), *report and recommendation adopted*, 2024 WL 5169255 (S.D.N.Y. Dec. 19, 2024) (dismissing NYCHRL claim when plaintiff's allegation failed to give rise to plausible inference of discrimination); *McMillian v. MTA Metro-N. R.R.*, No. 20-CV-01026 (MKV), 2021 WL 4311318, at *5 (S.D.N.Y. Sept. 20, 2021) ("[T]he NYCHRL still requires a showing of some evidence from which discrimination can be inferred, and a plaintiff cannot rely on conclusory allegations of discrimination.").

### C.    Plainitff's Retaliation Claims

The NYSHRL prohibits retaliation "against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law § 296. Similarly, under the NYCHRL, it is "an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate . . . in any manner against any person because such person has[,]" *inter alia*, "opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8-107(7).

"To state a claim for retaliation under the NYSHRL and NYCHRL a plaintiff must allege 'that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'" *Dobney v. Walt Disney Co.*, No. 23-CV-05380 (JPO), 2024 WL 325336, at *5 (S.D.N.Y. Jan. 29, 2024) (quoting *Mihalik*, 715 F.3d at 112); *see also Arazi v. Cohen Bros. Realty Corp.*, No. 20-CV-08837

(GHW), 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022) (for claims that accrued on or after October 11, 2019, NYCHRL's more liberal pleading standard applies to NYSHRL retaliation claims). "[O]pposing any practice can include situations where a person, before the retaliatory conduct occurred, merely made clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she thought his treatment of the victim was wrong." *Lettieri v. Anti-Defamation League Found.*, No. 22-CV-09889 (PAE), 2023 WL 5152447, at *6 (S.D.N.Y. Aug. 10, 2023) (quoting *Mihalik*, 715 F.3d at 112) (alterations omitted)); *see also Goldzweig v. Consol. Edison Co. of New York, Inc.*, No. 25-CV-00089, 2026 WL 21005, at *4 (2d Cir. Jan. 5, 2026) ("The NYCHRL takes a broader approach than Title VII or the ADEA as to what constitutes a protected activity for the purpose of a retaliation claim.").

Despite these more liberal standards, the Court finds that, for the same reasons as his federal claims, Plaintiff has not plausibly alleged that any retaliatory action was taken against him because he engaged in protected activity. *See Chamberlain*, 2024 WL 5170266, at *8 ("Regardless of whether the retaliation claim is brought under federal, state, or city law, it requires a causal connection between the alleged protected activity and the retaliatory conduct at issue.").

## V.    Section 1983 Claims

Plaintiff asserts § 1983 claims against the Individual Defendants in their personal capacities for violations of the Equal Protection Clause of the Fourteenth Amendment for First Amendment retaliation.[12] (Compl. at PDF p. 10.)

---

[12] In his Complaint, Plaintiff states that NYCHA acted with deliberate indifference to his safety and rights by failing to investigate or mitigate threats that led to an assault against him in July 2022. (Compl. at PDF p. 12.) However, Plaintiff does not assert a § 1983 claim against NYCHA and, in any event, does not plausibly allege a custom or policy to support such a claim. *See Soba v. New York City Hous. Auth.*, No. 11-CV-07430 (NRB), 2013 WL 3455449, at *5 (S.D.N.Y. July 9, 2013).

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Ferreira v. Dosin*, No. 23-CV-10336 (NSR), 2026 WL 26036, at *6 (S.D.N.Y. Jan. 5, 2026) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Patterson*, 375 F.3d at 225. To assert a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Ferreira*, 2026 WL 26036, at *6. In order for an individual defendant to be liable, "the plaintiff must demonstrate the defendant was personally involved in the alleged constitutional violations." *Id*. "Personal involvement is defined as 'direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates.'" *Id.* (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

### A.    <u>Statute Of Limitations</u>

Section 1983 does not contain a statute of limitations and, therefore, courts borrow from the most appropriate or analogous statute of limitations in state law, so long as it is not inconsistent with federal law or policy. *See Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 107 (2d Cir. 2023) (citing cases). In New York, the most analogous statute for federal civil rights

cases under § 1983 is N.Y. C.P.L.R. 214(2), which includes "an action to recover upon a liability, penalty or forfeiture created or imposed by statute . . ." and provides a three-year statute of limitations. *Id*. Accordingly, any of Plaintiff's § 1983 claims that accrued prior to May 27, 2022 are time-barred.

### B.    Equal Protection

"[P]ublic employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law." *Vega*, 801 F.3d at 87 (citing *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122-23 (2d Cir. 2004)). "To state a Section 1983 claim predicated on an alleged violation of the Equal Protection Clause, U.S. Const. amend. XIV, § 1, a plaintiff 'must demonstrate that he was treated differently [from] others similarly situated as a result of intentional or purposeful discrimination.'" *Gaddy v. Ports Am.*, No. 13-CV-03322 (AT) (HBP), 2015 WL 3929693, at *7 (S.D.N.Y. June 15, 2015) (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)).

The analysis of § 1983 claims "is similar to that used for employment discrimination claims brought under Title VII, the difference being that a §1983 claim, unlike a Title VII claim, can be brought against individuals." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). However, unlike claims brought under Title VII, to state a claim for employment discrimination under § 1983, a plaintiff must establish that "the defendant's discriminatory intent was a 'but-for' cause of the adverse employment action." *Naumovski v. Norris*, 934 F.3d 200, 222 (2d Cir. 2019). Retaliation claims alleging an adverse action because of a complaint of discrimination also are actionable under § 1983. *See Vega*, 801 F.3d at 80. The same standards used to analyze Title VII and ADEA claims also apply to retaliation claims under § 1983. *See Gonzalez v. City of New York*,

845 F. App'x 11, 13-14 (2d Cir. 2021) (summary order) ("A district court's evaluation of a retaliation claim based on a violation of the Fourteenth Amendment under Section 1983 mirrors the analysis of such a claim under Title VII.").

Plaintiff alleges that Jew held senior executive positions at NYCHA; that she "made materially false and misleading statements to the New York City Department of Investigation (DOI) in response to Plaintiff's discrimination complaint and failed to address Plaintiff's subsequent follow-up communications" and, "[a]s a senior decision-maker in hiring and personnel matters, her continued presence at NYCHA underscores the ongoing and systemic nature of the violations alleged." (Compl. at PDF p. 3.) However, Plaintiff does not allege any facts regarding which discrimination claim he is referring to or the false or misleading statements allegedly made by Jew. Rather, his allegations appear to be an impermissible attempt to hold Jew liable based upon her position of authority. *See Ferreira*, 2026 WL 26036, at *6. (individual defendant in § 1983 action "is not liable simply on the basis of holding a high position of authority"). Similarly, Plaintiff alleges that Van Gendt discriminated against him "by repeatedly rejecting him for positions for which he was qualified" and that the selection of preferred candidates was endorsed or carried out by senior NYCHA officials, including Jew, Van Gendt and Oluwa. (Compl. at PDF pp. 3, 6.) However, Plaintiff does not allege which, if any, hiring decisions these defendants were involved in or any other facts as to their personal involvement in the alleged violations of his constitutional rights. Plaintiff also fails to allege any facts from which the Court can infer that any of these individuals were motivated by discriminatory intent.

Plaintiff's claims against the other Individual Defendants suffer from the same defect. Plaintiff alleges that Oluwa provided false information to DCAS regarding Plaintiff's qualifications

32

and repeatedly misspelled Plaintiff's name in official documents; Moye harassed Plaintiff in front of junior staff, took away his office entrance key, left personal items (shoes) front of his workspace and improperly influenced disciplinary actions and promotional denials; Rivera engaged in "daily harassment" against Plaintiff, issued a false counseling memorandum, made negative statements to NYCHA executives that damaged Plaintiff's promotional prospects and filed a false complaint against him; Goris delegated his own and others' duties to Plaintiff, blamed Plaintiff for a rent calculation error; and McLean subjected Plaintiff to unequal discipline, including over ten unwarranted counseling memoranda between 2002 and 2024. (Compl. at PDF pp. 3-4.) Plaintiff does not allege any facts to support a plausible inference of discriminatory intent. *See Gaddy*, 2015 WL 3929693, at *7 (dismissing § 1983 equal protection claim when complaint was "devoid of factual allegations that support a plausible inference of intentional discrimination"). Accordingly, the Court recommends that Plaintiff's § 1983 equal protection claims be dismissed.

### C.    First Amendment Retaliation

To state a § 1983 claim for First Amendment retaliation "a plaintiff must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82 (2d Cir. 2022). "When the speaker is a public employee, [his or] her speech is protected when it involves a matter of public concern and [he or] she is speaking as a private citizen." *Oliver v. Penny*, No. 21-111, 2022 WL 2165814, at *2 (2d Cir. June 16, 2022).

33

"To constitute speech on a matter of public concern, an employee's expression must be fairly considered as relating to any matter of political, social, or other concern to the community." *Quinones v. City of Binghamton*, 997 F.3d 461, 466 (2d Cir. 2021) (quoting *Montero v. City of Yonkers*, 890 F.3d 386, 399 (2d Cir. 2018)). "[S]peech that is calculated to redress personal grievances—even if touching on a matter of general importance—does not qualify for First Amendment protection." *Id.* "Likewise, the First Amendment does not protect speech that "principally focuses on an issue that is personal in nature and generally related to the speaker's own situation." *Id.* at 467.

Plaintiff has not plausibly alleged that any of his complaints constitute protected speech under the First Amendment. Plaintiff's complaints regarding alleged discrimination and retaliation against him are the type of personal grievances that do not qualify for First Amendment protection. *See Oliver*, 2022 WL 2165814, at *2 (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 190 (2d Cir. 2008)) ("[P]ersonal grievances, such as discrimination complaints, are not matters of public concern and are 'not brought within the protection of the First Amendment' simply because the grievances 'could be construed broadly to implicate matters of public concern.'"). Although Plaintiff briefly refers in his Complaint to complaints he made concerning "unsafe conditions" (Compl. at PDF p. at 12), he alleges no facts regarding any such complaints. Accordingly, the Court recommends that Plaintiff's § 1983 claim for First Amendment retaliation be dismissed.

## VI.    Leave To Amend

The Second Circuit has counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Lorely Fin.*

*(Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190-91 (2d Cir. 2015); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."). *Pro se* litigants, in particular, "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." *Edwards v. Middleton*, No. 19-CV-01362 (VB), 2020 WL 4474682, at *7 (S.D.N.Y. Aug. 3, 2020) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)), *vacated in part on other grounds sub nom. Edwards v. Arocho*, 125 F.4th 336, 2024 WL 5244996 (2d Cir. 2024). District courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). However, "[l]eave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

The Court recommends denying leave to amend Plaintiff's Title VII and ADEA claims based upon discrete acts prior to September 22, 2022 and Plaintiff's § 1983, NYSHRL and NYCHRL claims that accrued prior to May 27, 2022, as the Court finds those claims are barred by the applicable statutes of limitations. *See Milberg LLP v. HWB Alexandra Strategies Portfolio*, No. 19-CV-04058 (AT), 2020 WL 3833829, at *5 (S.D.N.Y. July 8, 2020) (noting that amendment would be futile where claims are time-barred). The Court recommends granting Plaintiff leave to amend his remaining claims since Plaintiff may be able to allege facts that would entitle him to pursue such claims. *See Kauffman v. New York Presbyterian Hosp.*, 762 F. Supp. 3d 309, 321 (S.D.N.Y. 2025)

(granting leave to amend when Court could not "definitively say that [the plaintiff] would be unable to allege any facts that would entitle him to pursue his claims").

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss (ECF No. 30) be GRANTED and that Plaintiff be given leave to amend his claims, except for his Title VII and ADEA claims based upon discrete acts prior to September 22, 2022; his § 1983 claims that accrued prior to May 27, 2022; and his NYSHRL and NYCHRL claims based on discrete acts prior to October 17, 2020.

Dated:    January 31, 2026
          New York, New York

_____
**STEWART D. AARON**
**United States Magistrate Judge**

*                    *                    *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Torres.

36

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).